IN THE UNITED STATES DISTRICT COURT
EASTERN DIVISION OF MISSOURI
EASTERN DIVISION

GEORGE STEVENS,                )

AND                         )

HELEN NICKELS,             )

PLAINTIFFS,              )

vs.                        )      Cause No.:    4:10CV951 JCH

CITY OF ST LOUIS,         )

AND                         )

TONYA HARRY,            )

AND                         )

TONYA HALL,             )

AND                         )

ROBERT BOND,           )

AND                         )

CARLA HARRISON,      )

AND                         )

LOUIS SOWARD          )

AND                         )

CORRECTIONAL MEDICAL SERVICES, INC.  )

DEFENDANTS.           )
                              )

## THIRD AMENDED COMPLAINT

COMES NOW, Plaintiffs, by and through counsel, and for their Third Amended

1

Complaint, states as follows:

1.      Plaintiff George Stevens, father of decedent Michael Stevens, brings this action on behalf of all entitled to recover under Mo. Rev. Stat. §537.080, et seq., which is commonly referred to as the Missouri Wrongful Death Statute.  Plaintiff George Stevens has standing to also bring an action for monetary damages for the death of his son up to the time of his death, pursuant to Mo. Rev. Stat. §537.020.1.  The decedent fathered no children during his lifetime and was not married at the time of his death.

2.      Plaintiff Helen Nickels, personal representative of decedent Michael Stevens, brings this action for damages under 42 USC §1983 and for equitable relief under 28 USC §§2201 and 2202 in regards to violations by Defendants of rights secured by Plaintiff by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.  Attorney's fees and costs are sought pursuant to 42 USC §1988.

3.      Plaintiffs further bring this action on behalf of Michael Stevens for all available claims and remedies.

4.      This Court has jurisdiction over Plaintiffs' claims of violation of federal, constitutional and state rights pursuant to 42 USC section 1331 and 1343.  Further, venue is proper in this Court pursuant to 28 USC section 1391 because the claims for relief arose in the City of St. Louis, Missouri.

5.      At all times mentioned herein, Plaintiff George Stevens was and is domiciled in and a resident of St. Louis County, State of Missouri and Plaintiff Helen Nickels was and is domiciled in and a resident of St. Louis City.

6.      Plaintiffs are authorized to bring these actions on behalf of Michael Stevens.

7.      At all relevant times, Defendant City of St. Louis ("City") was and is a public

entity as a municipal or county subdivision of the state of Missouri and has insurance for the negligence described herein.  Further, the City operated the Justice Center.

8.      At all relevant times, Defendant Tonya Harry ("Harry") was a duly appointed and acting officer of the City of St. Louis and/or Department of Public Safety, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, City of St. Louis, and/or Department of Public Safety.

      a.      Harry is sued in both her official and individual capacity for damages.

      b.      Upon information and belief, Harry was responsible for the admissions area of the jail at all times relevant.

9.      At all relevant times, Defendant Tonya Hall ("Hall") was a duly appointed and acting officer of the City of St. Louis and/or Department of Public Safety, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, City of St. Louis, and/or Department of Public Safety.

      a.      Hall is sued in both her official and individual capacity for damages.

      b.      Upon information and belief, Hall was responsible for observing the female portion of the post admissions housing ("PAH") area of the jail at all times relevant.

10.     At all relevant times, Defendant Robert Bond ("Bond") was a duly appointed and acting officer of the City of St. Louis and/or Department of Public Safety, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, City of St. Louis, and/or Department of Public Safety.

      a.      Bond is sued in both his official and individual capacity for damages.

    b.  Upon information and belief, Bond was the shift commander at all times relevant.

  11.  At all relevant times, Defendant Louis Soward ("Soward") was a duly appointed and acting officer of the City of St. Louis and/or Department of Public Safety, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, City of St. Louis, and/or Department of Public Safety.

    a.  Soward is sued in both his official and individual capacity for damages.

    b.  Upon information and belief, Soward was responsible for observing the male portion of the post admissions housing ("PAH") area of the jail at all times relevant.

  12.  At all relevant times, Defendant Carla Harrison ("Harrison") was a duly appointed and acting officer of the City of St. Louis and/or Department of Public Safety, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, City of St. Louis, and/or Department of Public Safety.

    a.  Harrison is sued in both her official and individual capacity for damages.

    b.  Upon information and belief, Harrison was the supervisor in control of PAH.

  13.  Defendant Correctional Medical Services, Inc. ("CMS") is a Missouri Corporation in good standing that is located and doing business within the Eastern District of Missouri.

    a.  CMS is being sued in its individual and official capacities.

    b.  Upon information and belief, CMS was contracted by the City of St. Louis, Missouri, Department of Public Safety, Division of Corrections, to provide mental health care and management of arrestees confined at its facilities.

c.      At all times relevant hereto, CMS employed persons whose job, acting in the course and scope of their employment or agency on behalf of CMS, was to provide mental health care for arrestees.

14.      At all relevant times, Defendants City, Hall, Harry, Bond, Harrison, and Soward ("City Defendants") owed Plaintiff's decedent a duty to train and supervise its employees, supervise detainees in its jail, observe and watch detainees in its jail, prevent homicide and homicide attempts in its jail, and/or promulgate and enforce policies regarding the supervision of detainees in jail.

15.      At all relevant times, City Defendants were responsible for the supervision and well-being of inmates while housed at the Justice Center.

16.      At all relevant times, Defendant City hired employees, including but not limited to Hall, Harry, Bond, Soward, and Harrison, who were working in the course and scope of their employment, and had certain duties, tasks and discretionary activities to perform to ensure the safety and well-being of inmates while housed at the Justice Center.

17.      At all relevant times, CMS was responsible for the evaluation of arrestees, and their mental and physical conditions, in order to properly segregate arrestees at PAH.

## COMMON FACTUAL ALLEGATIONS

18.      On or about April 26, 2008, both Michael Stevens ("Stevens") and Robert Francis ("Francis") were admitted into the Justice Center, a correctional facility located within and operated by the City of St. Louis.  Upon admission, CMS and City, and their respective employees, are charged with initially classifying the arrestees as to their needs and risks.

19.      CMS and Harry were responsible for retrieving information from arrestees and recommending a suitable holding scenario.

5

20.   Both Stevens and Francis reported to a CMS employee and/or Harry that they had a mental health condition, yet Defendants CMS and Harry decided to house the two arrestees together.

21.   Employees of Defendant City knew that Francis had been in a fight earlier that day.

22.   Employees of Defendant City knew that Francis was known by other arrestees as the nickname "Crazy".

23.   Employees of Defendant City knew that at some point during the day of April 26, 2008, Francis stated that he wanted to cut up and eat a white prisoner.

24.   Employees of Defendant City knew that at some point during the day of April 26, 2008, several arrestees had asked not to be put in the same cell as Francis.

25.   After an arrestee is moved to PAH, employees of Defendant City have the ability to reclassify the arrestee upon information gathered from their observation of said arrestees.

26.   Soward did not sufficiently gather information because he failed to adequately make rounds as prescribed by Justice Center procedure.

27.   Soward knew that Stevens did not have a wrist band, which is used to classify the arrestees, but did not take any action to determine why Stevens wrist band was missing and/or to retrieve pertinent information that may have been communicated by said wrist band.

28.   After Francis and Stevens were in PAH, Soward observed both arrestees exhibiting unusual behavior, yet he didn't segregate Francis and Stevens.

29.   Shortly before the strangling, Soward took a lunch break.

30.     When taking a lunch break, Soward would enter the female side of PAH, and hand over his keys to Hall.  Upon information and belief, Soward told Hall that there were no problems in the male side of PAH.

31.     Hall was responsible for monitoring the male side of PAH while Soward took a lunch break.

32.     As soon as Soward left, Francis began strangling Stevens.

33.     There was a period of time when there was no officer on duty in the male side of PAH.

34.     Upon realizing that Francis was strangling Stevens, other arrestees attempted to alert the officers on duty by banging on their cell doors and screaming, but no one responded for a significant period of time.

35.     Hall eventually entered the male side and went to the cell holding Stevens and Francis.  Hall found Stevens face down on the floor of the cell.

36.     Hall did not attempt to resuscitate Stevens.

37.     Other officers responded to the scene, but no one attempted to resuscitate Stevens until a nurse arrived several minutes later.

38.     Stevens was taken to a hospital and pronounced dead.

## VIOLATION OF 42 USC Section 1983

Comes now, Plaintiff Helen Nickels, and for Count I of her cause of action, state to the Court as follows:

39.     Plaintiff restates, realleges, and incorporates by reference each of the allegations in paragraph 1-38 above.

40.     42 USC Section 1983 states in part: "Every person who, under color of any

7

statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress."

41.     Defendants and their officers, agents, assistants, or employees working under their supervision, individually and collectively, were deliberately indifferent to decedent's federal constitutional rights, either because they actually intended to deprive him or because they acted with reckless disregard of his Constitutional rights to be safe and free from violent attack by fellow residents, thus subjecting him to cruel and unusual punishment in violation of the 8th and 14th amendment.

42.     Defendants City, Harry and CMS, and their officers, agents, assistants, or employees working under their supervision, individually and collectively, showed deliberate indifference to decedent's safety, thereby subjecting decedent to a substantial risk of serious harm by failing to adequately gather the information they were charged in retrieving, to be used to properly classify inmates and to segregate them, and by ultimately placing Stevens in the same cell as Francis, as further outlined above.

a.      Defendants City, Bond, Harrison and CMS knowingly instituted and/or allowed an official practice, policy and custom of failing to properly gather information regarding arrestees and/or failing to utilize said information to properly segregate arrestees so as to prevent serious risks of substantial harm.  The actions, and inactions, of the defendants as alleged herein were in furtherance of the policy, practice and custom of the City and CMS and

8

said policies, practices and/or customs caused the individual defendants to demonstrate deliberate indifference to said serious risk of substantial harm.

b.      Said policies and customs involve a pattern of persistent and widespread practice that has become so permanent and well settled as to have the force and effect of law.

c.      Said policies and/or customs violate federal law and/or directs an employee to do so.

d.      Said policies and/or customs were adopted with deliberate indifference to its known or obvious consequences.

e.      Said policies and/or customs are the driving force behind the actions and inaction alleged herein and Stevens' injuries.

f.      Even though the Defendants City, Bond, Harry, Harrison, and CMS were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and Defendants actually drew the inference, Defendants failed to respond reasonably to said risk and/or were deliberately indifferent to said risk.

g.      Defendants City, Bond, Harry, Harrison, and CMS failure to respond reasonably to the substantial risk of serious harm constituted cruel and unusual punishment, a deprivation of life without due process of law, a deprivation of liberty without due process of law, illegal seizure of Michael Stevens' person, and a deprivation of freedom from summary punishment all in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

43.     Defendants City, Soward, and Hall, and their officers, agents, assistants, or employees working under their supervision, individually and collectively, showed deliberate indifference to decedent's safety, thereby subjecting decedent to a substantial risk of serious

9

harm by failing to properly monitor and supervise the arrestees, and to allow Stevens to be subjected to Francis by keeping them in the same cell, as further outlined above.

a.      Defendants City, Bond, and Harrison knowingly instituted and/or allowed an official practice, policy and custom of failing to properly monitor and supervise the arrestees as to prevent serious risks of substantial harm.  The actions, and inactions, of the defendants as alleged herein were in furtherance of the policy, practice and custom of the City and said policies, practices and/or customs caused the individual defendants to demonstrate deliberate indifference to said serious risk of substantial harm.

b.      Said policies and customs involve a pattern of persistent and widespread practice that has become so permanent and well settled as to have the force and effect of law.

c.      Said policies and/or customs violate federal law and/or directs an employee to do so.

d.      Said policies and/or customs were adopted with deliberate indifference to its known or obvious consequences.

e.      Said policies and/or customs are the driving force behind the actions and inaction alleged herein and Stevens' injuries.

f.      Even though the Defendants City, Bond, Soward, Harrison, and Hall were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and Defendants City, Bond, Soward, Harrison and Hall actually drew the inference, these Defendants failed to respond reasonably to said risk and/or were deliberately indifferent to said risk.

g.      Defendants City, Bond, Soward, Harrison, and Hall's failure to respond

reasonably to the substantial risk of serious harm constituted cruel and unusual punishment, a deprivation of life without due process of law, a deprivation of liberty without due process of law, illegal seizure of Michael Stevens' person, and a deprivation of freedom from summary punishment all in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

44.      Defendants City, Soward, Harrison, Bond, and Hall, and their officers, agents, assistants, or employees working under their supervision, individually and collectively, showed deliberate indifference to Stevens' known serious medical needs, thereby subjecting Stevens to a substantial risk of serious harm, as further outlined above.  Stevens had a serious medical need, and defendants at all times had actual knowledge of Stevens' serious medical needs and failed to take reasonable measures to meet Plaintiff's serious medical needs.

a.      Defendants City, Bond, and Harrison knowingly instituted and/or allowed an official practice, policy and custom of failing to administer or allow to be administered basic first aid.  The actions, and inactions, of the defendants as alleged herein were in furtherance of the policy, practice and custom of the City and said policies, practices and/or customs caused the individual defendants to demonstrate deliberate indifference to said serious risk of substantial harm.

b.      Said policies and customs involve a pattern of persistent and widespread practice that has become so permanent and well settled as to have the force and effect of law.

c.      Said policies and/or customs violate federal law and/or directs an employee to do so.

d.      Said policies and/or customs were adopted with deliberate indifference to its known or obvious consequences.

e.       Said policies and/or customs are the driving force behind the actions and inaction alleged herein and Stevens' injuries.

f.       Even though the Defendants City, Bond, Soward, Harrison, and Hall were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and Defendants City, Bond, Soward, Harrison and Hall actually drew the inference, these Defendants failed to respond reasonably to said risk and/or were deliberately indifferent to said risk.

g.       Defendants City, Bond, Soward, Harrison, and Hall's failure to respond reasonably to the substantial risk of serious harm constituted cruel and unusual punishment, a deprivation of life without due process of law, a deprivation of liberty without due process of law, illegal seizure of Michael Stevens' person, and a deprivation of freedom from summary punishment all in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

45.       All of the aforementioned acts and omissions of defendants constituted a lack of training, wherein defendants Hall, Soward, and Harry's training was plainly deficient, the supervisory defendants, including Bond, Harrison, CMS, and the City had notice of said deficiency, and the deficiency was obviously going to result in the violation of Stevens' constitutional rights, which represents a deliberate indifference to Stevens' constitutional rights, as alleged above.

46.       As a direct and proximate result of said acts of Defendants, Michael Stevens suffered a loss of life and Plaintiff has forever lost and been deprived of the services, companionship, comfort, instruction, guidance, counsel, training and support of the decedent; and Plaintiff has further suffered other pecuniary losses by reason of decedent's wrongful death,

**12**

including funeral expenses, and Plaintiff seeks all such recovery for all such injuries and damages under 42 USC §1983.

47.     The actions and omissions of Defendants constitute a violation of the Civil Rights Act 42 USC §1983 et seq., and Plaintiff is therefore entitled to equitable relief, damages, and recovery of litigation costs, including reasonable attorney's fees and expert witness fees pursuant to § 1988.

48.     In addition, Plaintiff seeks recovery for such damages that decedent suffered before his death and for which he would have been entitled to recover had he lived.

WHEREFORE, Plaintiff prays that this Honorable Court award compensatory damages against Defendants, award punitive damages against Defendants, award Plaintiff his reasonable attorney's fees, award Plaintiff his costs of this action and any such further relief as this Court deems appropriate under the circumstances.

## COUNT II:  WRONGFUL DEATH AGAINST DEFENDANTS SOWARD, HALL, HARRISON, HARRY, BOND, AND CMS

Comes now, Plaintiff George Stevens, and for Count II of his cause of action, state to the Court as follows:

49.     Plaintiff restates, realleges, and incorporates by reference each of the allegations in paragraph 1-48 above.

50.     Plaintiff brings this count on behalf of Michael Stevens, as well as all persons entitled to recover under Mo. Rev. Stat. §537.080 et. seq., which is commonly known as Missouri Wrongful Death Statute.

51.     Plaintiff's decedent was owed the following duties by Defendants Soward, Hall, Harry, Harrison, and Bond:

        a.      provide emergency medical care;

b.      respond to serious medical emergencies;

c.      be aware of Plaintiff's decedent's individual physical and mental health

needs and provide incarceration consistent with those needs.

52.     Plaintiff's decedent was owed the following duties by Defendant CMS:

a.      properly gather information regarding arrestees;

b.      communicate to other officers the information gathered;

c.      refer arrestees to the appropriate holdings in relation to the assessed risk;

and

d.      ensure that the arrestees receive the appropriate physical and mental health

referrals.

53.     These Defendants breached these duties to Plaintiff's decedent in one or more of

the respects as set forth above, and were thereby negligent.

54.     As a result of the foregoing, Plaintiff has been damaged.

55.     All acts of Bond, Harry, Harrison, Soward, and Hall were committed while acting

within a ministerial capacity.

56.     All acts of Bond, Harry, Harrison, Soward and Hall resulted in the deprivation of

a constitutional right and that right was clearly established at the time of the deprivation.

57.     Bond, Harry, Harrison, Soward and Hall owed decedent a duty for the

performance of ministerial duties in which Stevens has a special, direct and distinctive interest.

Said interest exists because the injury to Stevens was reasonably foreseeable as a result of these

defendant's breach of the aforementioned duties.

58.     As a direct and proximate result of said acts of Defendants, Stevens

suffered a loss of life and Plaintiff has forever lost and been deprived of the services, companionship, comfort, instruction, guidance, counsel, training and support of the decedent; and Plaintiff has further suffered other pecuniary losses by reason of decedent's wrongful death, including funeral expenses.

59.     In addition, Plaintiff seeks recovery for such damages that decedent suffered before his death and for which he would have been entitled to recover had he lived.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in an amount which is fair and reasonable to be proven at the trial by jury in this matter, for punitive damages, and for such other and further orders as this Court deems necessary and proper under the circumstances.

RESPECTFULLY SUBMITTED

By:     /s/ BEN ARANDA
        RICK BARRY, MBE #25592
        BEN ARANDA, MBE #545520
        1750 S. Brentwood Blvd., Suite 295
        St. Louis, Missouri  63144
        Phone:  (314) 918-8900
        Fax:     (314) 918-8901

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed March 14, 2011 electronically with the Clerk of the Court to be served by operation of the court's electronic filing system upon the following:

Craig Higgins
Room 314 City Hall
St. Louis MO 63103

Ben Aranda /s/

15